Welcome back, Ms. Jensen. When you're ready, feel free to proceed. Thank you.  Good morning, Your Honors, and may it please the Court. I'm back again with another law school-type question. We have some very complicated issues in the case of Mr. Maccani this morning that I'm excited to talk to Your Honors about. The first thing that I think is the most significant point in this entire case is one that appears to have been largely overlooked by everybody. And that, of course, is the fact that Iowa Code Section 724.4c did not make anything about Mr. Maccani's possession of a firearm, save, of course, the shortened firearm that is the basis of the conviction. But in any of his interactions with the Linn County Police, he was not in violation as a matter of law of the Iowa statute. This, of course, undermines the probable cause findings of the District Court in relationship to both the warrant and in the event that the auto exception is found applicable. Because, of course, probable cause is required both to issue a warrant and probable cause is required to enter a vehicle if this was, in fact, a vehicle. Counsel, what was the impetus for the arrival of the authorities here? What were they coming to investigate or to confront? Sure, Your Honor. This was Mr. Maccani was helping his father, James, clean up after the derecho that hit Cedar Rapids. There was no power. This is about a week after the storm. There was no power in the neighborhood. Mr. Maccani had been cutting down trees. He was in this trailer, approximately 9 by 12 cargo trailer that I think everybody agrees was, in fact, being used as his home. It was outfitted, had all of the trappings of a residence. Of course, the parties disagree whether that makes it a vehicle subject to the auto exception, but that's a separate issue. Mr. Maccani was playing his acoustic guitar and the neighbors were attempting to start a generator and he had gotten fired up from the sounds of it. It was making some noise. Neighbors called police. So, really, all they were doing was investigating this call of the neighbors that this guy was out in the neighborhood acting weird. Disturbance in the neighborhood. It was kind of a neighborhood disturbance. Exactly. Neighborhood disturbance. No specific offense. And, in fact, when we go through all of this, let's talk about what did police know? What was the probable cause for a warrant in this case? And we look at the entire report and recommendation of the magistrate judge, the order of the Article III judge, the briefing of the parties. Everybody says he was drunk and in possession of a firearm. And that's a violation of Iowa law. And that's true. It is a violation of Iowa law to be drunk and in possession of a firearm. Unless you are in your own dwelling. And that is very clearly provided for. Section 724.4c. Except, as provided in subsection 2, a person commits the offense if they are intoxicated and carries a dangerous weapon on or about the person. Section 2, of course, provides this section shall not apply to a person who carries or possesses a dangerous weapon while in his own dwelling. Does it matter if you're in the door on a public street? There is no case law on that particular point, your honor. He's not on private property on the street. He's not. He might be in property that belongs to him in the trailer, but he's parked on the street. He's not visible fully from externally, standing at least most favorable to you in the doorway. Correct. Yes, your honor. And I believe that the plain definition of, under Iowa Code Section 702.10, a dwelling is any building or structure, permanent or temporary, or any land, water, or air vehicle adapted for overnight accommodation of persons and actually in use, permanent or temporary sleeping quarters, whether or not such person is present. Even if that covers the shotgun in the doorway, what about the handgun in his waistband when he came out to talk to the officers? Your honor, if you examine the record extremely closely, Judge Williams actually made a specific finding on that point. He says, defendant's right arm remained inside the trailer and out of sight during the entire interaction. There was no mention of any firearm before he admitted, Mr. McCanny himself admitted that he had a firearm in his hand. Defendant was neither standing outside of the trailer nor standing fully visible in the doorway. He emerged onto the grass without a gun in his hand. In fact, Judge Williams made additional findings in particular about Deputy Steins' testimony who had commented, I believe that Deputy Pritchard had said he saw something small and dark in his back. But during this time, Mr. McCanny was in fact up in the doorway. The time when he was lower on the ground, Judge Williams made a factual finding that the government didn't object to, that there was no determination at that time that that was in fact a gun. And there is no clear evidence that the gun that was found in the threshold and seized from the threshold inside of the trailer, that he was ever off of the premises of the trailer in that time. And I believe the court also found that the statement about him being intoxicated was conclusory and didn't find that that was sufficient to support the warning. The court did make that finding and that raises an excellent point that I think is one of my other most significant points in this case, which is I think that the court was absolutely right in that finding. Now, can an officer tell if a person is intoxicated? Probably. But do we just rely on the officer saying the person is intoxicated? Well, I don't think that that is enough. And I think that this same analysis, Your Honor, also applies to the marijuana. Because it's a little confusing to me why the district court said there's no basis for the intoxication, but yet I can rely on the officer's training. Why wouldn't the warrant be sufficient as to the marijuana? Your Honor, the marijuana is extraordinarily problematic. And this is precisely the point that I'm trying to make. All we know about the marijuana is that officers observed, let me actually refer to the record specifically for this, Detective Schmid said that he observed a bottle, an orange-like pill bottle with a small amount of green leafy substance. There was no information, of course, in the warrant that based on Officer Schmid's training and experience he believed that to be marijuana. He just simply, as with the intoxication statement, said, I saw this and I believe that he was, that it was in fact marijuana. But given that it was in plain sight from outside the trailer, does it matter whether the warrant was valid? Well, yes, Your Honor. It matters for multiple reasons. First, it matters whether the warrant was valid because it is our position, of course, that the trailer is not subject to the auto exception, which of course means that a warrant was required for entry in the first place. If we take out anything about the gun when it comes to both the warrant and the auto exception, because it wasn't actually an offense for Mr. McAnty to have this gun since he never left his dwelling, and in response to your question earlier, Judge, I do believe it's very clear in the visible he never steps foot off of that threshold of the dwelling. Kind of the equivalent of a window. If I stand in my doorway and people can see me, that doesn't mean that I've left my home. But as far as the marijuana goes, the point that I want to make, of course, is that there's absolutely nothing more other than there was a little bit of green leafy substance observed in a pill bottle. Deputy Schmidt in the warrant didn't say anything about his experience, training, experience as a law enforcement officer. He did say that he was a patrol officer for three years and a deputy for ten, but he didn't specify what did that training involve, what were your job duties, did you ever interact with marijuana. We might guess. Certainly he could have been better accredited in the warrant, but the call we have to make is whether that was enough for the magistrate to make a conclusion that the officers that executed the warrant could have reasonably relied upon. Yes, and here, Your Honor, both with regard to the warrant and with regard to just probable cause on the scene, I think you have to consider what officers didn't do. They see a pill bottle. We don't know exactly how close they were. They didn't open the pill bottle. They didn't smell the contents of the pill bottle. They didn't examine it visually. It's an orange pill bottle. How can you even tell exactly what color of substance is in it? How can you tell that it's marijuana versus tobacco? They talk about catnip and oregano. I don't think that's quite as realistic as probably tobacco. There's a reference on page 75 of the transcript, and I think that this is significant too, where Deputy Steins testifies that he also observed pill bottles consistent with what the marijuana was found in and that he thought that the ammunition was in that as well. In fact, during the transcript, Mr. McKinney chimes up and he says there were pill bottles all over the place. And this court, of course, has found in another case that it's okay for officers to rely on things that they see unless there's kind of a basis not to rely on it. So is it reasonable for an officer to say, I believe the green leafy substance in a pill bottle is marijuana? It might be, but wouldn't we expect a reasonable officer to do something more? Do they get to just say, hey, look, there's a pill bottle and it's got something green and leafy in it, and now they can come in and search? No. They should smell it. They should open it. They should look at it. They have to make something more in relationship to the warrant than we needed even more specifically to be able to determine if the officer had the capability to make those findings. He doesn't just get to say it, just like with the intoxication. The whole point of the warrant requirement is that we let a neutral and detached magistrate make these calls. If I remember right, the pill bottle was observed when Deputy Omar went back into the trailer the second time. Is that right? I believe the pill bottle was observed by all of the officers. They all make reference to observing it essentially on the threshold of the doorway in plain view. In particular with the warrant, it's significant. That was actually seized before officers even applied for the warrant. So with a gun out of the picture, specifically on the warrant, we now a personal use quantity of maybe 1 to 2 grams of marijuana that he suspected in that bottle. Is that a basis? What evidence is going to be found inside that trailer? Might there be evidence of additional prohibited substances? Perhaps, but I think that we need specific and articulable facts on this record. We can't just – the entire suppression hearing transcript, we had a lot of that. Well, officer, if you find some drugs, there's probably more. That may be true as a general matter and it's certainly relevant to the officer's experience and training and how much credibility we should give to their findings. But one, they have to tell us about those things. They can't just say that it's true and we rely on it. And two, it has to be founded in some logical police work. If the warrant's defective here, does that impact the shotgun? Absolutely, Your Honor. In what way, if the officers had acquired access to the inside of the trailer based on the father's consent and observe it in plain view? Well, Your Honor, on the father's consent, I would just point to the court's Almeda Perez case. Apparent authority exists unless there are other circumstances that would cause a reasonable man to doubt the validity of that apparent authority. And while Mr. McCanny did say, Dad, secure my trailer, immediately before that, about the nine and a half minute mark on Exhibit 5, Mr. McCanny is screaming at the cops, you're not going in my trailer, you're not touching my stuff, and you don't have permission to search. So our position, of course, would be that a reasonable officer would not reasonably think that James McCanny had authority to then, immediately after Phil McCanny said, no, cops can't go in my place, to then say, sure, go ahead and go on in. I would reserve the rest of my time for rebuttal, Your Honors. Thank you, Ms. Jensen. Mr. Morfitt. May it please the Court, Anthony Morfitt on behalf of the United States. This is a case about deputies responding in the middle of the night to a disturbance in the middle of They did not know what to expect. They had reported of a disturbance. And unfortunately, after they arrived, it's a situation escalated into, of sorts, an armed standoff that resulted in the defendant having to be forcibly taken to the ground and restrained. Following this tense situation, one deputy decided to go and apply for a search warrant. Now, frankly, the search warrant in this case is not a paragon of virtue of how we all would like search warrants to be written by our law enforcement officers. It could have, and it should have been, much better. The deputy did not do a good job drafting the warrant. But your decision here doesn't rely upon, or doesn't rest upon, whether he did a good job or not. Whether there was probable cause established, and whether or not the deputies who then executed that warrant acted upon it in good faith. Counsel, if the warrant fails to establish probable cause as to the weapons, what impact does that have on the legality of the overall search? Your Honor, the government believes the search is still legal because of good faith. The weapons were included in the warrant, even if ultimately this Court determines it wasn't probable cause. The deputies on the scene were still looking for weapons in good faith. But beyond that, even if the warrant is no good and good faith does not apply, there are other exceptions and other reasons that the officers went into that trailer and seized that gun. Namely, the automobile exception, and then as well as third-party consent and community caretaking to blow out the candle. Did the warrant establish probable cause to search for marijuana, or had that already been seized? How would you address that? Your Honor, I believe the marijuana that they saw in the pill bottle had already been seized.  So it's the government's position that established probable cause to search the trailer for marijuana because of the pill bottle that had already been seized, but based upon the probability that there would be more evidence inside the trailer. So is the appellant's view of the facts or presentation of the facts accurate that the handgun was never seen outside the trailer? No, Your Honor. Not in the government's view. And this is summarized by Judge Williams on page 12 of his order, which is found at the District Court docket 57, where he describes that after the defendant had gone in and put the, presumably tossed the shotgun up onto the bunk where it was ultimately found, defendant then stepped out of the trailer and turned to walk towards the rear of the trailer where Deputy Schmidt had previously been. When defendant turned, he gave up the vantage point of his backside, allowing Deputy Steins to observe what he believed to be a handgun tucked in the small of defendant's back. Now this was pre-warrant though, right? Yes, Your Honor. And they eventually did take him down and restrain him, right? Yes. So they would have known whether there was or was not a gun at that point? Yes, although Judge Williams goes on to note that after Deputy Steins and another deputy that was there that hasn't come up yet, Deputy Pritchard, Deputy Pritchard ordered the defendant to put the gun down. And that's when the gun then ended up on the, the handgun ended up on the threshold of the doorway of the trailer. So you're saying he had exited and then put the gun back inside? Yes, Your Honor. The deputy saw it in his back pocket or back waistband. One of the deputies ordered him to put it down. He complied at that point and put it on the threshold of the trailer. But during that time frame, he was outside of the trailer in possession of the handgun and in violation of Iowa Code 724.4C. And the fact that the deputies knew he had had this handgun outside the trailer, along with a lot of other facts, go towards where, go towards the conclusion that even if there wasn't probable cause under this warrant, they acted in good faith. Was there any testing done for blood alcohol content or any other objective determination of intoxication? Not that I'm aware of in the record, Your Honor. Following the incident, because the defendant had injured himself, he was taken to the hospital to be treated. And I'm not sure if there's any timeline on when he was released from the hospital custody, if there would have even been a chance to get blood alcohol testing done. So the only evidence of intoxication is officers' perception that he was? Yes, Your Honor. Perception buoyed by the facts that they set forth in their testimony at the suppression hearing. Again, these are facts that probably should have been in the search warrant application itself. But there is significant evidence that the defendant was, in fact, intoxicated during this incident. He was ranting. He was disjointed in his speech, shouting expletives. He, in fact, admitted drinking to the deputies. He had highly agitated behavior, mumbled and slurred speech, a thick-tongued, argumentative behavior. There was a bottle of alcohol actually found in plain view outside of the trailer. And then once he was finally taken into custody after the scuffle outside the trailer and put into a patrol car, he was banging his head against the side of the patrol car. So again, all of that facts would have been helpful to be in the search warrant because it was all known prior to Deputy Schmidt obtaining the warrant. But ultimately, those facts are still important to show the good faith of these deputies in executing the search warrant because what they know goes towards what their good faith was. So ultimately, even if the warrant isn't valid? The deputies that executed the warrant, did they have anything to do with the preparation of the warrant itself? Two of the three did not. Deputy Schmidt, I believe, is the one who prepared the warrant and obtained it from the magistrate. My understanding, and I don't have a direct site to the record on this, is that Deputy Schmidt then returned to the trailer and was present while the search was going on and may have participated in it. But Deputy Omar and Deputy Steins did not have any involvement in preparing the warrant. Were they present during the original confrontation? Deputy Steins was. Deputy Omar arrived after the initial three deputies. And I believe his testimony is that he arrived while the scuffle, after they'd taken the defendant to the ground, was ongoing. And his initial role was to go into the trailer and do a protective sweep to make sure there was no one else inside the trailer. So Deputy Omar was actually inside the trailer twice before the warrant was executed. He went in to do the protective sweep. And then he went in with the defendant's father's permission to extinguish the candle. And it's the government's position that that approval from the defendant's father was both actual and apparent authority under the third-party consent doctrine. Officers had heard the defendant place the trailer in his father's custody, asking his father to secure it. Now, it's true that he was – Isn't there a difference between securing it and placing it in his custody? In fact, the father didn't even have a key to it. Yes, Your Honor, although there was a – I believe the defendant told his father where there was a locking key located inside the doorway to the trailer. Right. So if it was in his custody, why would he not have access or even knowledge of where the key was? Your Honor, it wasn't in his possession or his authority until the defendant told him about it. So previously, it wasn't. So he would have had no need for a key. His house was located right there. So he was staying in his residence while the defendant was using the trailer. The father was not. So once the – and ultimately, Your Honor, I think whether it's authority or securing it, possession of it is somewhat semantics in this case, because what the deputies asked for permission to do was to go in and blow out a candle, part of which would be necessary to secure a trailer. And the defendant's father, 81 years old with obvious medical conditions, was – Are you relying on the community caretaking exception for that? Yes, Your Honor, both. What was the emergency? The emergency – and it's probably on the low end of emergencies, but to blow out the candle before it could potentially cause a fire. So a burning candle is an emergency? In this particular circumstance, yes, Your Honor. Again, emergency is a – Do you have any knowledge of that? Is there any precedent for that? Not to my knowledge, Your Honor. It's certainly taking the word emergency to the extremes. But in any event, they needed to do this in order to prevent an emergency potentially. So if they did not have permission or authority to enter the trailer, did that constitute a warrantless search? Your Honor, are you asking if the warrant's both invalid and they did not have third-party consent, is that a warrantless search? No, when they went there to blow out the candle. When they went in to blow out the candle? I do not believe so, Your Honor. They were not in there for the purpose of conducting a search. They had already done a protective sweep. Yes, Your Honor. So the purpose of entering the trailer, and also this is where the automobile exception comes in, Your Honor. Even if the entry could be called a warrantless search to blow out the candle, there is an exception to the warrant requirement that applies in this case, the automobile exception. Well, how is this thing an automobile? It's on blocks, it's chocked, it's got no motor. I mean, how does it fit the automobile exception? Yes, Your Honor. It is a trailer that was readily mobile in the sense that it would not take long to take those blocks off, take the chocks off, tires, and hook it up to the truck that was parked immediately in front of the trailer on the street. And that perhaps is the most key distinction for why this does not qualify as a residence. The language is that it has to be, you know, and I believe this may be from the Soderman case. No, excuse me, the Soderman case is a different issue. But here, one of the tests for whether or not it's a dwelling or a residence is whether it is located on a place that is not regularly used for residential purposes. This trailer was parked in the middle of a public street. No one pitches a tent or uses a public street for residence. It may not be a residence, but it also might not be an automobile. I mean, maybe this is something else. Your Honor, it's the government's position that it is an automobile because it qualifies for the first prong of that test, that it's readily mobile. And there's a significant amount of case law, primarily from other circuits, detailing that campers and trailers can be considered automobiles for the automobile exception. Your Honor, the other issue I'd like to touch on is the plain view exception. So assuming that Deputy Omar was in the trailer legally to blow out the candle, however you want to get him there, the defendant argues that the illegal nature of the shotgun that was found on the bunk was not readily apparent. In doing so, the defendant in their reply brief actually cites to the testimony of the wrong deputy. They cite to the testimony of Deputy Steins, who testified that he couldn't tell that it was illegal when he saw it in the defendant's hand. Ultimately, the district court judge concluded Deputy Steins couldn't have seen the gun in his hand. But that's the testimony that the defense cites to in its reply brief. In the suppression hearing transcript at pages 104 and 105 is a testimony of Deputy Omar, who is the one who actually saw the gun, and he indicates that he immediately saw that the shotgun was illegal. While he didn't know exactly how short it was, the shortened nature of it was readily apparent to him, and he concluded that it was illegal. So if Deputy Omar was justifiably in the trailer, the seizure of the shotgun is also justified under the plain view doctrine. But what if he wasn't there legally? What are you relying on then? Your Honor, then we're relying upon good faith execution of the search warrant and also inevitable discovery. It's the government's position that even if Deputy Omar hadn't gone in there and seen the shotgun, there would have been a search warrant applied for because there was an alternative line of investigation already ongoing with Deputy Schmidt to investigate the marijuana as well as the defendant's unlawful possession while intoxicated. So even if Deputy Omar wasn't there legally, inevitably the police would have discovered that weapon. Unless there are any further questions, I would yield the balance of my time. Thank you, Mr. Morfitt. What does the record show, if anything, about your client's attitude when the officers immediately approached him? Was he truculent, defensive, argumentative, threatening? He was pretty fired up. I don't believe he was threatening, Your Honor. He kind of ranted and raved about his rights as an American citizen and what have you. But he was polite to the officers outside of the swearing- Was that when he had the gun in his waistband? Excuse me? He was doing this while he had the gun in his waistband? Well, regarding that, Your Honor, I think it's really important to point out, okay, as long as he was in his dwelling, it was not illegal for him to have that gun no matter how drunk or truculent or fired up he was. And on that point, I disagree- Could he have pointed it to the officers with impunity? No, Your Honor. No. In fact, as Judge Williams found, that gun, he kept it behind him, in his hands. When officers asked him, he said, I'm not going to come out right now because I have a gun in my hand. He made comments about having a permit, his rights as an American citizen, et cetera. There's no allegation in this record that he ever pointed that gun or directly attempted to pose some sort of a risk to the officers with it outside of the mere fact that a gun was present. Was he- Okay. It's not illegal to possess a weapon while you're intoxicated as long as you're in your own home? Correct. That's exactly correct, Your Honor. And the government, I think, is incorrect when it says that he was on the ground when Deputy Steins first had him. Referring to page 8 of Judge Williams' order adopting the report and recommendation, he talks pretty extensively about this over the next two pages. And he says, Judge Roberts found that Deputy Pritchard, and this was based on Deputy Steins' testimony at the detention hearing, had something small or dark in his back. But he discusses in here through the entire time that when Deputy Steins first encountered Mr. Worthington, he was in the doorway on the threshold. The video shows this. Deputy Steins actually testified that he heard Deputy Schmid talking to Mr. Worthington, and when he came around, he saw them engaging in that conversation. So this is still the point at which Your Honor said, you know, while he's standing in the doorway, he's never actually come out. It's about 20 inches down to the ground. There's just one – there's no steps leading up to it, just one big step. And he never steps down off of that platform. Throughout the record, it is very clear that when he steps down on that platform, off of that platform for his trailer, he was, in fact, unarmed. Is there a question of inevitable discovery here? No, Your Honor, and particularly because what was there to find in the trailer at this point? I mean, at this point, all we have left in the case, if it's not a crime for him to have had that gun while he was indwelling, we have a police observation with no detail, no smell, no scent, didn't even open the bottle of maybe one to two grams of a leafy substance observed under conditions in a pill bottle. There could be no good-faced exception of applicable here? No, Your Honor. I think the Grow case – this is really in line with the Grow case. There is nothing identified. What were police supposed to seize? They've kind of swooped into this, the notion that, you know, well, there's this narrative paragraph. Well, the narrative paragraph refers to a long gun, not illegal. Bandolier, not illegal. Marijuana, already seized. Handgun, already seized. There's nothing in it. If they'd already seized the marijuana, couldn't they go back and look for, I think as Chief Judge Smith said, additional evidence of drugs? Well, at that point, Your Honor, I think it still comes down to that question of does the officer simply saying so with absolutely no further information, no further investigation whatsoever? And I think that's kind of a core question is, does an officer simply saying, I saw a green leafy substance in a bottle, is that enough? Do they have to do something more? I submit to you that they do have to do something more. They have to at least open the bottle and look at it. They didn't do any of that here. You have not yet made the old classic, the rough man's, woodsman's rough house. You know, the British common law, the king may not enter even the woodsman's rough house. I'm not familiar with that, Your Honor. I'm sorry. Well, I thought that's what we all learned in law school on the first day of criminal law. Well, when I went to law school, the laws changed so much then. I may have been closer to the Blackstone era than you. It was a while back for me too, Your Honor. If there are no further questions, Your Honors, my time has expired. Thank you, counsel. The court wishes to thank both counsel for the arguments you've provided to the court this morning. We'll take the case under advisement.